## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **LORI ANN MENDENHALL,** | |
| **Plaintiff,** | **7:14CV5007** |
| **vs.** | |
| **CAROLYN W. COLVIN,**<br>**Acting Commissioner of the Social**<br>**Security Administration,** | **ORDER** |
| **Defendant.** | |

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner).[1]  Lori Ann Mendenhall (Mendenhall) appeals the Commissioner's decision denying Mendenhall's application for disability benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401, *et seq.* and Supplemental Security Income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*

Mendenhall filed an application for disability benefits and SSI on July 5, 2011, and on September 30, 2011, alleging her disability of back problems, memory problems, and the inability to lift things began July 1, 1997 (AR. 131-144, 210).  The Social Security Administration (SSA) denied benefits initially and again upon reconsideration (AR. 55, 56, 58, 59, 60-64, 68-72, 73-75).  Mendenhall appealed the denials to an administrative law judge (ALJ) who held an administrative hearing on May 1, 2013 (AR. 33-53).  On May 29, 2013, the ALJ determined Mendenhall was not disabled within the meaning of the Act (AR. 13-32).  The Appeals Council denied Mendenhall's request for review on March 20, 2014 (AR. 1-7).  Mendenhall now seeks judicial review of the ALJ's determination as it represents the final decision of the Commissioner.  **See** 42 U.S.C. § 405(g).

Mendenhall filed a brief (Filing No. 24) in support of this administrative appeal. The Commissioner filed the administrative record (AR.) (Filing No. 11) and a brief (Filing No. 28) in opposition of Mendenhall's appeal for benefits.  Mendenhall filed a brief

---

[1] The parties consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  **See** Filing No. 15.

(Filing No. 29)[2] in opposition to the Commissioner's brief.  Mendenhall appeals the Commissioner's decision, asking the decision be reversed and benefits awarded because:  (1) the ALJ improperly evaluated her symptoms and limitations when the ALJ established Mendenhall's physical residual functional capacity (RFC); and (2) the ALJ failed to include all of Mendenhall's impairments in the ALJ's hypothetical to the vocational examiner (VE).  **See** Filing No. 24 - Brief p. 6-10.

## FACTUAL BACKGROUND

### A.    Medical History

Mendenhall previously worked as a secretary and as a customer aide (AR. 18, 25, 201, 211).  Mendenhall alleged she became disabled on July 1, 1997 (AR. 131-144).  At the time of her application for benefits, Mendenhall was forty-one years old and forty-four years old when the ALJ rendered his decision (AR. 27, 138).

Mendenhall first sought treatment with Donn Turner, M.D. (Dr. Turner), at Front Range Center for Brain and Spine Surgery, P.C. (Front Range Center) for low back pain on August 18, 2003 (AR. 282-284).  Dr. Turner noted Mendenhall had tenderness over the lumbrosacral junction, but Mendenhall's gait and station were normal and her sensory exam was normal (AR. 283).  Mendenhall underwent a lumbar spine magnetic resonance imaging (MRI), which showed a degenerative bulging disc (AR. 283-284). Dr. Turner recommended Mendenhall undergo an L5-S1 fusion (AR. 283-284).

On October 8, 2003, Mendenhall visited Dr. Turner at Poudre Valley Hospital, complaining she could barely function due to her back pain (AR. 329-330).  Dr. Turner noted Mendenhall had trouble going from a sitting to standing position (AR. 329).  Mendenhall's gait and station were normal, her motor strength testing was normal, and her sensory exam was normal (AR. 330).  Two days later, Mendenhall underwent an L5-S1 lumbar fusion for her back (AR. 292, 326-328).  Post-operation, Mendenhall stated her pain was still severe, but her discharge status was "improved" (AR. 292).

On November 10, 2003, Mendenhall followed up with Dr. Turner, and he noted she was doing pretty well, but she was still quite sore from the operation (AR. 285).  Dr.

---

[2] The court considered Mendenhall's reply brief for purposes of this appeal although Mendenhall filed the brief three weeks after its due date without leave or explanation for the delay.

Turner started Mendenhall on physical therapy and wrote Mendenhall was unable to be released for employment (AR. 285).  Mendenhall began physical therapy the same day at Front Range Center and the report stated Mendenhall could return to transitional work in two months (AR. 294).  Once Mendenhall was able to return to work, she was limited to working four to eight hours and restricted to sitting in one-hour durations (AR. 294).

On November 17, 2003, Mendenhall attended physical therapy at Mid-Nebraska Physical Therapy and Sports Center (AR. 295).  Mendenhall reported she was doing fairly well, but on examination her lumbar paraspinals were tight with tenderness, and she had decreased lumbar lordosis (AR. 295).  Mendenhall reported during the examination her lower extremity symptoms were no longer present (AR. 295).

Mendenhall had an x-ray performed on her lumbar spine on December 31, 2003, which revealed mild degenerative changes at several levels, but normal vertebral alignment with no fracture or dislocation (AR. 297).  Mendenhall attended another physical therapy session on February 28, 2004, at Mid-Nebraska Physical Therapy and Sports Center (AR. 302).  Mendenhall continued to work, but reported soreness with her work duties (AR. 302).

On March 23, 2004, Mendenhall returned to Dr. Turner and complained of back and radicular pain in her left lower extremity, but the pain in her right leg was completely gone (AR. 287).  Mendenhall also said her pain was not getting worse over time (AR. 287).  Dr. Turner told Mendenhall to continue taking Neurontin, but warned her to only take narcotics as needed (AR. 287).

An April 15, 2004, x-ray of Mendenhall's lumbar spine showed mild degenerative changes, but normal vertebral alignment and no evidence of hardware complication or loosening (AR. 303).  On April 19, 2004, Mendenhall visited Dr. Turner and he noted her spine film looked fine and showed good fusion at L5-S1 with no movement in flexion versus extension, but she still had some back pain (AR. 288).  On December 17, 2004, Dr. Turner noted Mendenhall's lumbar spine MRI showed some degenerative disc disease at L3-L4, possible trace protrusion at L4-L5, and a wide laminectomy at L4-L5 and L5-S1 (AR. 289).  Dr. Turner would not recommend surgical treatment for Mendenhall's leg and back pain (AR. 289).

On March 2, 2005, Mendenhall visited George Girardi, M.D. (Dr. Girardi), at Front Range Center (AR. 318).  Mendenhall's sensation was intact and her gait was normal, but her lower left extremity was notably weaker than her lower right extremity (AR. 318). Dr. Girardi suggested a spinal cord stimulator for relief from back and leg pain and prescribed Percocet and Avinza for pain in the meantime (AR. 318).  On March 30, 2005, Mendenhall had a trial spinal cord stimulator inserted in her spine (AR. 323).

On September 30, 2005, Mendenhall visited Sanjay Jatana, M.D. (Dr. Jatana), an orthopedic surgeon, at Denver Spine Center (AR. 346).  Mendenhall stated her pain had progressively worsened since her original injury occurred (AR. 346).  On exam, Mendenhall had no muscle spasms, her hip rotation was non-painful, and she had a slightly diminished sensation in the left L4 and L5 dermatomes (AR. 346-347).  Dr. Jatana recommended nerve root blocks and an L5-S1 hardware block if the nerve root blocks were nonconcordant (AR. 346-347).

On October 13, 2005, Mendenhall received spinal injections and had a hardware block inserted at L5-S1 (AR. 354-355).  After the procedures, Mendenhall said her back pain dropped from a two to zero on a ten-point scale (AR. 355).  Mendenhall also said her buttock and thigh pain dropped from a seven to a two on a ten-point scale (AR. 355).  On October 14, 2005, Mendenhall saw Dr. Jatana and reported temporary improvement in her legs and low back from the hardware block and injections, but she still had low back and thigh pain ranging from five to ten on a ten-point scale (AR. 345). Dr. Jatana suggested removing the hardware to see if it helped Mendenhall's symptoms (AR. 345).

On December 5, 2005, Mendenhall followed up with Dr. Jatana after her lumbar hardware removal procedure (AR. 343).  Mendenhall said her legs were better and her low back pain was less intense (AR. 343).  Dr. Jatana recommended Mendenhall start a physical therapy regimen and recommended Mendenhall return to work part-time the following week and then consider starting full-time (AR. 343).  On January 27, 2006, Mendenhall returned to Dr. Jatana and he noted Mendenhall appeared to be making progress, but she still had pain near the sacrum (AR. 341).  At the time, Mendenhall worked part-time with restrictions (AR. 350).

4

On April 14, 2006, Mendenhall saw Teresa Corley, P.A.-C (Corley), a physician's assistant, at Denver Spine Center (AR. 338-339).  Mendenhall was working full-time with no restrictions (AR. 349).  Mendenhall said she completed physical therapy and had been taking walks and stretching (AR. 338).  Corley noted narcotic dependence and stated Mendenhall should be completely off of medications by May 16, 2006 (AR. 338-339).  On July 13, 2006, Mendenhall reported she was working full-time with no restrictions (AR. 348).

Nearly three years later, on April 8, 2009, Mendenhall went to Midlands Family Medicine to have her back reexamined (AR. 414).  Gary L. Conell, M.D. (Dr. Conell), a family practitioner, noted spinal injections helped Mendenhall for a short time (AR. 414).  Dr. Conell prescribed medication for immediate pain but told Mendenhall he would not give her any more (AR. 414).  On April 17, 2009, Mendenhall underwent a lumbar spine MRI, which revealed no recurrent herniation, significant stenosis, or subluxation at L5-S1 (AR. 429-430).  However, the MRI showed moderate stenosis and moderate foraminal narrowing at L3 and L4 (AR. 430).

On May 22, 2009, Mendenhall visited J. Paul Meyer, M.D. (Dr. Meyer), at NPNPG Pain Management (AR. 370-371).  With the exception of her back pain, Mendenhall did not have musculoskeletal joint swelling, loss of coordination, or muscle strength weakness (AR. 370).  Further, Mendenhall's cervical spine was normal with no muscle spasms and unrestricted flexion, extension, and right and left lateral rotation (AR. 371).  Mendenhall's thoracic spine had normal range of motion, muscle strength, tone, and stability (AR. 371).  Mendenhall's lumbar spine was normal with mild tenderness and her gait, station, and posture were also normal (AR. 371).  Dr. Meyer noted Mendenhall's history was not consistent with radicular pain, and he suggested a left sacroiliac joint injection (AR. 371).  Mendenhall received a sacroiliac joint injection on October 12, 2009 (AR. 369).  On November 16, 2009, Mendenhall followed up with Dr. Meyer and said she experienced two to three days of relief after the October injection (AR. 366).  Mendenhall received another sacroiliac injection the following day, on November 17, 2009 (AR. 367).

Mendenhall visited Midlands Family Medicine at various intervals from September 2010 to August 2011 (AR. 375-398).  On September 11, 2010, Dr. Conell

wrote Mendenhall had increasing back problems, which he attributed to family problems causing her anxiety and stress (AR. 397).   On June 30, 2011, Mendenhall said she wanted to apply for disability because of her back pain, but Dr. Conell wrote he was not sure she would qualify for disability (AR. 379).   Dr. Conell changed Mendenhall's pain medications, and Mendenhall did not return until August 5, 2011 (AR. 378-379).

On August 5, 2011, Mendenhall visited David Arthur, P.A.-C (Arthur), a physician's assistant at Midlands Family Medicine, and complained of low back pain and intermittent headaches (AR. 378).   Mendenhall specifically visited Arthur that day for a medication check on her depression medication (AR. 378).   On September 1, 2011, Arthur noted the drug Prednisone helped Mendenhall's back pain (AR. 451-453). On September 7, 2011, Mendenhall saw Deborah Weaver, M.D. (Dr. Weaver), an emergency medicine doctor, at Great Plains Regional Medical Center (AR. 539-542). Mendenhall complained of depression related to conflict with her ex-spouse (AR. 539).

On September 29, 2011, Mendenhall returned to Midlands Family Medicine (AR. 445).   Mendenhall complained of a headache and backache (AR. 445-447).   At the time, Arthur noted Mendenhall was using Tramadol frequently for pain (AR. 447).   On September 30, 2011, Arthur wrote a "To Whom It May Concern" letter on behalf of Dr. Conell stating Mendenhall suffered a head injury in December 2010 and had intermittent discomfort, lack of concentration, and memory loss since the injury (AR. 444).   In the letter Arthur stated the CT scans did not show definitive injury or damage (AR. 444).   On November 4, 2011, Dr. Conell wrote he was concerned about Mendenhall's chronic drug seeking behavior, but refilled Mendenhall's Tramadol, and took her off steroids (AR. 528-529).

On December 2, 2011, Mendenhall visited Sowmini Oomman, M.D. (Dr. Oomman), a neurologist, at Neurology Associates of Great Plains, complaining of headaches and displaying depression (AR. 518-521).   Mendenhall told Dr. Oomman she wanted to go on disability for back pain (AR. 518).   During the examination, Mendenhall refused to move her lower left extremities; however, Dr. Oomman observed Mendenhall crossing her legs during the examination (AR. 518, 521).   Dr. Oomman also noted Mendenhall walked without gait difficulty and got on and off the exam table without help (AR. 521).

On December 6, 2011, Lloyd Kimzey Jr., Ph.D. (Dr. Kimzey), a consultative examiner, examined Mendenhall and completed a psychological report (AR. 455-459). Mendenhall reported to Dr. Kimzey she had been working at a call center for just over a year (AR. 456). She thought it was a reasonable job but was not "extremely excited" about it (AR. 456). She said she previously lost her job as a hospital secretary because there were communication problems and because her employer thought she was making too much money (AR. 456). Mendenhall also explained how her back injury originally occurred and how she experienced ongoing, significant pain (AR. 456). Dr. Kimzey noted Mendenhall had some difficulty with mobility and appeared to be in some pain, but was able to sit through the appointment (AR. 457). Although Mendenhall reported limitations due to pain, Dr. Kimzey determined she did not have substantial restrictions in her activities of daily living (ADLs) (AR. 458). Dr. Kimzey determined Mendenhall's attention and concentration were adequate and she was capable of recalling and carrying out basic short and simple instructions under ordinary supervision (AR. 458). Dr. Kimzey diagnosed dysthymic disorder, mood disorder due to chronic back pain with depressive features, anxiety disorder due to chronic back pain with generalized anxiety features, personality disorder, and ongoing back pain and migraines (AR. 458).

On December 7, 2011, Leland Lamberty, M.D. (Dr. Lamberty), a consultative examiner, examined Mendenhall and completed a medical report (AR. 462-466). Dr. Lamberty observed tenderness over Mendenhall's lumbar spine, but found no obvious back or spine deformity (AR. 465). Mendenhall's range of motion in her back and spine was limited in all plains and her upper and lower extremities were normal with excellent range of motion (AR. 465). The lumbar spine x-ray showed very mild scoliosis, some evidence of sacroiliac joint arthritic change, and disk narrowing at the L5-S1 and L3-L4 disk spaces (AR. 467). The left hip x-ray showed mild degenerative change (AR. 465). Dr. Lamberty determined Mendenhall had chronic low back pain with left lower extremity radicular, status post lower lumbar spinal fusion, bilateral hip pain, significant anxiety, insomnia, and gastroesophageal reflux disease (AR. 465-466).

On December 21, 2011, Glen Knosp, M.D. (Dr. Knosp), a state agency medical expert, completed a Physical Residual Functional Capacity Assessment (AR. 471-477).

Dr. Knosp opined Mendenhall could lift and/or carry ten pounds and stand and/or walk for at least two hours (AR. 472). He further determined Mendenhall must alternate sitting and standing to relieve pain or discomfort (AR. 472). In addition, Dr. Knosp stated Mendenhall could never climb and could occasionally balance, stoop, kneel, crouch, and crawl (AR. 473). Dr. Knosp also stated Mendenhall must avoid extreme cold, vibration, and hazards (AR. 475).

That same day, Linda Schmechel, Ph.D. (Dr. Schmechel), another state agency medical expert, completed a Psychiatric Review Technique Form (PRTF) (AR. 480-494). Dr. Schmechel found Mendenhall had dysthymic disorder and mood disorder due to a medical condition which did not satisfy Listing 12.04 (Affective Disorders) (AR. 483). Dr. Schmechel also found Mendenhall had an anxiety disorder not enunciated in Listing 12.06 (Anxiety-Related Disorders) and a personality disorder not enunciated in Listing 12.08 (Personality Disorders) (AR. 485, 487). Regarding functional limitations, Dr. Schmechel determined Mendenhall had mild difficulties in social functioning and concentration, persistence, and pace (AR. 490). Mendenhall had no restrictions in ADLs and no episodes of decompensation (AR. 490). Dr. Schmechel found Mendenhall was capable of at least semi-skilled to simple work (AR. 492).

On December 21, 2011, Mendenhall presented to Midlands Family Medicine complaining of back pain (AR. 514-517). Mendenhall also asked for a letter for her lawyer concerning her back problems (AR. 517). The same day, Arthur wrote a "To Whom It May Concern" letter on behalf of Dr. Conell, which stated Mendenhall was currently employed, but had trouble working longer than four hours at a time because of back pain (AR. 503). He also noted Dr. Turner restricted Mendenhall to lifting no more than ten pounds, no bending, twisting, or vacuuming, and no standing for more than fifteen minutes without moving around (AR. 503). During a January 16, 2012, office visit, Arthur noted Mendenhall went through her medication "way too fast" and Mendenhall sought pain medication refills (AR. 508-510). Arthur counseled Mendenhall on ways to control pain without using medication and noted it was getting to the point where Mendenhall needed to seek help somewhere else if she could not follow directions regarding narcotics (AR. 508-510).

8

On March 29, 2012, Jerry Reed, M.D. (Dr. Reed), a state agency medical expert, completed a Physical Residual Functional Capacity Assessment on reconsideration and affirmed Dr. Knosp's opinion (AR. 553-554). Dr. Reed determined Mendenhall was capable of sitting for six hours a day with normal break periods and the ability to change positions (AR. 554). Dr. Reed mentioned Mendenhall is monitored closely on pain medications, but she remains capable of work as outlined in her initial application (AR. 554). Also on March 29, 2012, Christopher Milne, Ph.D., a state agency medical expert, completed a PRTF on reconsideration and affirmed Dr. Schmechel's PRTF (AR. 551-552).

On July 16, 2012, Mendenhall underwent a lumbar spine MRI, which showed some degenerative changes (AR. 574-575). On July 18, 2012, Mendenhall visited Dr. Jatana who noted Mendenhall's back pain improved after her hardware removal procedure (AR. 571-573). Mendenhall's low back was tender, and she had severe bilateral muscle spasms (AR. 571). Mendenhall said she wanted to proceed with lumbar decompression and fusion surgery because the spinal injections did not help her pain (AR. 573).

On September 17, 2012, Mendenhall responded to medical interrogatories from the Social Security Administration's Office of Hearings and Appeals (AR. 555-563). Mendenhall said she became unable to work in 2004, and she received unemployment after she was dismissed from her jobs at the hospital and Cabela's call center (AR. 556-557). Mendenhall said she could not sit or stand for long periods because of back, hip, and leg pain (AR. 556-557). Further, Mendenhall said she could walk and sit for half an hour and stand for five minutes (AR. 560). In addition, Mendenhall stated she shopped, drove twice a week for an hour, and went on walks when she was not in pain (AR. 560, 562). Mendenhall also said she tried to make her bed and tried to help clean counters (AR. 562). Finally, Mendenhall said her daily activities included showering, taking medication, and checking the computer (AR. 562).

On January 31, 2013, Mendenhall underwent an L3-S1 spinal decompression and fusion surgery (AR. 564-566). On March 6, 2013, Mendenhall followed up with Dr. Jatana regarding her surgery (AR. 576). Dr. Jatana noted degeneration of lumbar intervertebral disc and acquired spondylolisthesis (AR. 576). On April 24, 2013,

Mendenhall followed up with Dr. Jatana, who noted good placement of posterior hardware at L3-L5 and no evidence of hardware failure (AR. 580). Mendenhall's x-rays looked good, she appeared to be doing well neurologically, and her lower extremity motor testing was 5/5 (AR. 580). Dr. Jatana said it would be a challenge for Mendenhall to return to work at this point because sitting and standing for extended periods would be difficult (AR. 581). However, he wanted Mendenhall to follow up in three months after she attended physical therapy (AR. 580-581). Dr. Jatana also suggested a work capacity evaluation to provide objective information about Mendenhall's ability to return to work (AR. 581).

**B.      Administrative Hearing**

On May 1, 2013, Mendenhall appeared for an administrative hearing in connection with her disability application (AR. 33-53). Mendenhall testified she could not work because of back pain (AR. 47). She stated at the hearing her most recent surgery caused her back pain at the time (AR. 39). Mendenhall said she worked at a part-time job where she sat at a desk and answered calls until February 2012 (AR. 38-40). Mendenhall stated she did not drive longer than ten minutes because of back pain (AR. 38). Mendenhall also said she could drive for twenty minutes, sit for five minutes, and put laundry in the washer (AR. 42, 46, 49). Mendenhall stated she attended church a couple times and did very short and intermittent shopping before her surgery (AR. 49-50). Further, Mendenhall said she spent most of the day sitting in a legs-out position (AR. 44). Mendenhall said she could sit on her couch and love seat (AR. 43). Mendenhall also said she could sit in her chair if she elevated her legs and leaned back (AR. 43). In addition, Mendenhall stated she wore a back brace and was going to start physical therapy the following week (AR. 48-49). Mendenhall said she had surgery on January 31, 2013, and was still in recovery (AR. 39). Finally, Mendenhall stated her surgeon expected her to get better in a total of six months (AR. 50).

During the hearing, the ALJ asked the VE the following:

> I'm going to present you a couple of hypotheticals. Please assume an individual the same age, education and work experience as the claimant. Lift 10 pounds occasionally, 10 pounds frequently. Stand six hours, sit two hours in an

> eight-hour workday.   Never climb.   Occasionally balance,
> stoop, crouch, crawl, kneel.
>        No   extreme   cold   temperatures   and   vibrating
> machinery,   unprotected   heights,   hazardous   moving
> machinery, limited to jobs that do not demand attention to
> details or complicated instructions or job tasks.   Can this
> hypothetical individual do the past work of the claimant?

(AR. 51).  The VE responded if the hypothetical claimant's telephone sale job counted
as past work, then the hypothetical claimant could perform this job (AR. 51-52).   The
ALJ asked the VE if there were any other jobs the hypothetical claimant could perform
in the economy (AR. 52).  The VE's general opinion was the hypothetical claimant could
perform a wide range of unskilled, sedentary jobs, available in the state and national
economy, including an ampoule sealer, wire patcher, or final assembler (AR. 52).


## THE ALJ'S DECISION

The ALJ issued his final decision on May 29, 2013, in which he determined
Mendenhall was not disabled within the meaning of the Act (AR. 16, 26).   The ALJ
framed the issue as to whether Mendenhall was disabled under sections 216(i), 223(d),
and 1614(a)(3)(A) of the Act (AR. 16).   The ALJ defined disability as the inability to
engage in any substantial gainful activity by reason of any medically determinable
physical or mental impairment or combination of impairments that can be expected to
result in death or last for a continuous period of not less than twelve months (AR. 16).
**See** 42 U.S.C. § 423; 20 C.F.R. § 404.1505.

The ALJ must evaluate a disability claim according to the sequential five-step
analysis established by the Social Security regulations.   **See** 20 C.F.R. § 404.1520(a)-
(f); *Phillips v. Astrue*, 671 F.3d 699, 701 (8th Cir. 2012).

> To determine disability, the ALJ follows the familiar five-step
> process,   considering   whether:   (1)   the   claimant   was
> employed;   (2)   [she]   was   severely   impaired;   (3)   [her]
> impairment was, or was comparable to, a listed impairment;
> (4)   [she]   could   perform   past   relevant   work;   and   if   not,   (5)
> whether [she] could perform any other kind of work.

*Lott v. Colvin*, 772 F.3d 546, 548 (8th Cir. 2014).  More specifically, the ALJ examines:

> [A]ny current work activity, the severity of the claimant's
> impairments, the claimant's residual functional capacity and
> age,   education   and   work   experience.     **See**   20   C.F.R.

§ 404.1520(a).  If the claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience.  If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy.  A claimant's residual functional capacity is a medical question.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (internal citations omitted).  "If a claimant fails to meet the criteria at any step in the evaluation of a disability, the process ends and the claimant is determined to be not disabled."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citation omitted); **see** *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).

In this case, the ALJ followed the appropriate sequential analysis.  At step one, the ALJ noted Mendenhall did not engage in substantial gainful activity since April 4, 2010 (AR. 18).  At step two, the ALJ determined Mendenhall had the following severe impairments as defined by Social Security regulations:  degenerative disc disease of the lumbar spine; degenerative joint disease of the hips; and obesity (AR. 19).  The ALJ determined these impairments caused significant limitations on Mendenhall's ability to perform basic work activities (AR. 19).  Additionally, the ALJ found Mendenhall did not have a severe mental impairment (AR. 19).

Before proceeding to step four of the sequential evaluation process, the ALJ determined Mendenhall's ability to perform work-related functions, defined as Mendenhall's RFC, was limited to the following:

Perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).  The claimant can lift and carry 10 pounds frequently and occasionally.  She is able to walk or stand for 2 hours in an 8-hour day and sit for up to 6 hours in an 8-hour day.  The claimant may occasionally climb stairs but should never climb.  She can occasionally balance, stoop, crouch, kneel, and crawl.  She must avoid prolonged exposure to extreme cold and vibrations.  She must avoid unprotected heights and moving machinery.  In addition,

12

> secondary to her reported chronic pain, the claimant is limited to jobs that do not demand attention to details or complicated job tasks or instructions.

(AR. 20).

The ALJ explained his RFC determination was based on a consideration of all Mendenhall's symptoms and the extent to which the symptoms could reasonably be accepted as consistent with objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Rulings (SSR) 96-4p and 96-7p (AR. 20).  In his decision, the ALJ followed a two-step process used to consider the importance of a claimant's symptoms in making an RFC determination (AR. 20).  In the first step, the ALJ must determine whether there is any underlying medically determinable physical impairment present that can reasonably be expected to produce the claimant's pain or other symptoms (AR. 20).  Second, once an underlying physical impairment that can reasonably be expected to produce the claimant's pain or other symptoms has been shown, the ALJ is required to determine the degree to which they limit the claimant's functioning (AR. 20-21).  To the extent a statement about the intensity, persistence, or limiting nature of pain or other symptoms is not substantiated by objective evidence, the ALJ must make a finding on the credibility of the statement based on the entire case record (AR. 21).

After considering the medical opinions, the ALJ gave significant weight to Dr. Knosp's opinions based on Dr. Knosp's examination of Mendenhall on December 21, 2011 (AR. 24).  The ALJ stated Dr. Knosp reviewed Mendenhall's entire medical record and was familiar with the evidentiary standards used by the SSA (AR. 24).  The ALJ also determined the objective evidence on the record revealed only mild degenerative joint disease of Mendenhall's hips, but she retained full range of motion and she only had mild stenosis and degenerative disc disease of the lumbar spine (AR. 24).  The ALJ afforded significant weight to Dr. Kimzey's psychological examination (AR. 24).  Dr. Kimzey opined Mendenhall had no restrictions in her ADLs, had adequate attention and concentration, retained the ability to recall short and simple instructions, and could relate to co-workers and supervisors (AR. 24).  The ALJ gave Dr. Kimzey's opinion significant weight because of its consistency with Mendenhall's employment history and lack of mental health treatment (AR. 24).

The ALJ gave minimal weight to the opinions provided by Dr. Lamberty and Dr. Conell, and only partial weight to Dr. Jatana's opinion (AR. 24-25). Dr. Lamberty stated Mendenhall had very mild scoliosis, but offered no opinion regarding any limitations pertaining to the alleged condition (AR. 24). Dr. Conell noted Dr. Jatana's limitations for Mendenhall, but there was not any medical documentation to support these limitations (AR. 24). The ALJ opined Dr. Jatana's comments were contemporaneous with Mendenhall's recovery from surgery, thus not indicative of long-term health (AR. 25). The ALJ also noted Dr. Jatana provided opinions regarding Mendenhall's ability to work, but this conclusion is reserved to the commissioner (AR. 25).

In making his decision, the ALJ noted the objective evidence did not support the degree of limitation alleged by Mendenhall (AR. 23). The ALJ stated it was significant Mendenhall worked for a number of years, earning a substantial salary, after her first back surgery, and the reason she cited for being terminated was not medical, but monetary and personal in nature (AR. 23). The ALJ also stated Mendenhall's application for benefits directly coincided with her familial problems, indicating there may be other factors involved besides her alleged health complaints (AR. 23). The ALJ determined Mendenhall's receipt of unemployment benefits from 2010 to 2012 indicated Mendenhall was willing and able to work (AR. 23). Regarding psychological impairment, the ALJ found Mendenhall had no restrictions in terms of ADLs (AR. 24). Ultimately, the ALJ concluded Mendenhall's age, education, work experience, and RFC allowed her to find work in the national economy, and therefore she was not disabled (AR. 26).

## STANDARD OF REVIEW

A district court is authorized jurisdiction to review a decision to deny disability benefits pursuant to 42 U.S.C. § 405(g). A district court is to affirm the Commissioner's findings if "supported by substantial evidence on the record as a whole." *Young v. Astrue*, 702 F.3d 489, 491 (8th Cir. 2013). Substantial evidence is defined as less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision. **See** *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010); **see also** *Minor v. Astrue*, 574 F.3d 625, 627 (8th Cir. 2009) (noting "the 'substantial evidence on

the record as a whole' standard requires a more rigorous review of the record than does the 'substantial evidence' standard"). "If the ALJ's decision is supported by substantial evidence, [the court] may not reverse even if substantial evidence would support the opposite outcome or [the court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014). "When considering whether the ALJ properly denied social security benefits, [the court] determine[s] whether the decision is based on legal error, and whether the findings of fact are supported by substantial evidence in the record as a whole." *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011). The court reviews questions of law de novo. **See** *Juszczyk v. Astrue,* 542 F.3d 626, 633 (8th Cir. 2008). Furthermore, "[the court] defer[s] to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Whitman v. Colvin*, 762 F.3d 701, 708 (8th Cir. 2014).

## DISCUSSION

### A.     ALJ's RFC Determination

Mendenhall argues the ALJ improperly evaluated her symptoms and limitations when the ALJ established Mendenhall's RFC. **See** Filing No. 24 - Brief p. 3. Mendenhall argues the ALJ did not properly consider all relevant factors in determining whether Mendenhall had the capacity to perform the full range of sedentary work. **See** *id.* at 7.

There must be substantial evidence on the record as a whole to support the ALJ's RFC determination. **See** *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014). Substantial evidence is relevant evidence a reasonable mind would accept as adequate to support a decision. **See** *id.* at 935. It is the claimant's burden, rather than the Commissioner's, to prove the claimant's RFC. **See** *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (stating the claimant is responsible for providing evidence to establish the RFC); **see also** 20 C.F.R. § 404.1545(a)(3). Even so, the ALJ is responsible for developing the complete medical history. 20 C.F.R. § 404.1545(a)(3). The ALJ's determination of a claimant's RFC "must be supported by some medical evidence of the claimant's ability to function in the workplace." *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

In addition to the relevant medical evidence, the ALJ bases the RFC assessment on the relevant non-medical evidence including:  statements and observations provided by the claimant and claimant's family, friends, or other persons.  **See** 20 C.F.R. § 404.1545(a)(3).  When considering the claimant's subjective complaints of pain, the ALJ evaluates:  "1) the claimant's daily activities, 2) the duration, frequency and intensity of pain, 3) precipitating and aggravating factors, 4) the dosage, effectiveness and side effects of any medication, and 5) functional restrictions."  ***Renstrom v. Asture***, 680 F.3d 1057, 1065-66 (8th Cir. 2012).  When there are inconsistencies in the claimant's testimony, the ALJ may properly discount part of the testimony.  ***Id.*** at 1066.  Similarly, the ALJ may discount conclusions from a medical expert or treating physician if the conclusions are inconsistent with the record as a whole.  **See** ***Teague v. Astrue***, 638 F.3d 611, 615-16 (8th Cir. 2011).  Evidence which both supports and detracts from the decision is considered when determining whether substantial evidence supports the ALJ's decision.  **See** ***Wildman v. Astrue***, 596 F.3d 959, 964 (8th Cir. 2010).

"State agency medical . . . consultants . . . are highly qualified physicians . . . who are also experts in Social Security disability evaluation.  Therefore, [ALJs] must consider findings and other opinions of State agency medical . . . consultants . . . as opinion evidence."  20 C.F.R. § 404.1527(f)(2)(i).  While "there are circumstances in which relying on a non-treating physician's opinion is proper[,]" generally, "opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." ***Vossen v. Astrue***, 612 F.3d 1011, 1016 (8th Cir. 2010).  An ALJ does not err by considering the opinion of a state agency medical consultant along with the medical evidence as a whole.  **See** ***Casey v. Astrue***, 503 F.3d 687, 694 (8th Cir. 2007).

Mendenhall fails to identify any medical opinions the ALJ should have considered, but did not, or should have assessed with greater weight, but did not. Mendenhall fails to suggest any limitations the ALJ omitted from the RFC determination. The ALJ gave little weight to the opinions of Drs. Lamberty and Conell.  The ALJ gave partial weight to the opinion of Dr. Jatana, but determined the opinion was of a temporary nature due to Mendenhall's then-recent surgery.  Finally, the ALJ gave significant weight to the opinions of Drs. Knosp and Kimzey.

In formulating Mendenhall's RFC, the ALJ accounted for Mendenhall's symptoms and the extent her symptoms could reasonably be accepted as consistent with the objective medical evidence, opinion evidence, and other evidence.   The ALJ found Mendenhall can lift and carry ten pounds frequently and occasionally, walk or stand for two hours in an eight-hour day and sit for up to six hours in an eight-hour day.  **See** AR. 20.   The ALJ also found Mendenhall may occasionally climb stairs but should never climb.  **See *id.***   Further, the ALJ found Mendenhall can occasionally balance, stoop, crouch, kneel, and crawl.  **See *id.***   The ALJ found Mendenhall must avoid prolonged exposure to extreme cold and vibrations, unprotected heights, and moving machinery.  **See *id.***  In addition, secondary to her reported chronic pain, the ALJ  limited Mendenhall to jobs which do not demand attention to details or complicated job tasks or instructions.  **See *id.***

The ALJ also considered Mendenhall's medically determinable mental impairments of dysthymic disorder, anxiety, and personality disorder, singly and in combination.  **See** AR. 19.  The ALJ considered the four broad functional areas set out in the disability regulations for evaluating mental disorders:   1) ADLs; 2) social functioning; 3) concentration, persistence, or pace; and 4) decompensation.  **See** 20 C.F.R. § 404.1520a(c)(3).  The ALJ found Mendenhall had no limitations in ADLs, mild limitation in social functioning, mild limitation in concentration, persistence, or pace, and suffered no episodes of decompensation.  **See** AR. 19.  The ALJ found Mendenhall's determinable mental impairments caused no more than mild limitations and determined they were nonsevere disabilities.  **See** AR. 19.

The ALJ fully and properly evaluated the evidence in the record when determining Mendenhall's RFC.  The ALJ properly relied on opinions from non-treating and non-examining medical consultants, opinions from examining physicians, and treatment notes from examining doctors and therapists.  The record supports the ALJ's decision to rely on state agency consultants' opinions to the extent the opinions were consistent with the record as a whole.  Therefore, the court finds that, having properly considered the evidence in the record, substantial evidence supports the ALJ's findings with respect to Mendenhall's RFC, for the time period under consideration from July 1, 1997 to May 29, 2013.

B.     **VE Hypothetical**

Mendenhall argues the ALJ did not include all of her impairments in the ALJ's hypothetical to the VE.  **See** Filing No. 24 - Brief p. 10.   Mendenhall argues the inadequacy of the hypothetical to the VE "dilutes any answer by the VE".  **See** Filing No. 20 - Reply Brief p. 4.

"In fashioning an appropriate hypothetical question for a vocational expert, the ALJ is required to include 'all the claimant's impairments supported by substantial evidence in the record as a whole.'"  ***Swope v. Barnhart***, 436 F.3d 1023, 1025 (8th Cir. 2006) (**quoting *Grissom v. Barnhart***, 416 F.3d 834, 837 (8th Cir. 2005)); **see *Jones v. Astrue***, 619 F.3d 963, 972 (8th Cir. 2010).   The ALJ may rely on vocational expert testimony as "substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies."   ***Gieseke v. Colvin***, 770 F.3d 1186, 1188 (8th Cir. 2014)   The ALJ's hypothetical question must include credible impairments and limitations and does not need to use specific or symptomatic terms to describe the impairments where other descriptive terms can be adequately used.   **See *Gragg v. Astrue***, 615 F.3d 932, 940 (8th Cir. 2010).   The ALJ may omit alleged impairments from the hypothetical question when the record does not support the claimant's contention that the impairment is a significant restriction on performing gainful employment.   **See *Buckner v. Astrue***, 646 F.3d 549, 561 (8th Cir. 2011).

The hypothetical question posed to the VE in this case included the impairments the ALJ found to be substantially supported by the record as a whole and, seemingly unintentionally, overstated the amount of physical exertion and understated the amount of sitting necessary for the type of position Mendenhall could perform in accordance with her RFC.   During the hearing, the ALJ asked the VE the following:

> I'm going to present you a couple of hypotheticals.  Please assume an individual the same age, education and work experience as the claimant.  Lift 10 pounds occasionally, 10 pounds frequently.  **Stand six hours, sit two hours in an eight-hour workday**.  Never climb.  Occasionally balance, stoop, crouch, crawl, kneel.

> No extreme cold temperatures and vibrating machinery, unprotected heights, hazardous moving machinery, limited to jobs that do not demand attention to details or complicated instructions or job tasks. Can this hypothetical individual do the past work of the claimant?

(AR. 51) (emphasis added). The VE responded if the hypothetical claimant's telephone sale job counted as past work, then the hypothetical claimant could perform this job. The ALJ asked the VE if there were any other jobs the hypothetical claimant could perform in the economy. The VE's general opinion was the hypothetical claimant could perform **a wide range** of unskilled, sedentary jobs, and provided the examples of an ampoule sealer, wire patcher, or final assembler. **See** AR. 52.

Mendenhall argues the hypothetical did not include all the impairments found to exist by the ALJ. **See** Filing No. 24 - Brief p. 10. This is an inaccurate statement on two fronts. First, the ALJ overstated the amount of walking and standing required of Mendenhall on any given day, and the VE still determined Mendenhall could perform the functions of an unskilled, sedentary worker. Second, the VE determined the hypothetical individual could perform unskilled, sedentary jobs. According to Social Security Regulations, sedentary jobs require no more than two hours of walking or standing and approximately six hours of sitting. **See** SSR 83-10, 1983 WL 31251, at *5. The fact the VE responded to the hypothetical questions with sedentary positions suggests the VE understood the RFC was limited to two hours of standing and six hours of sitting in an eight-hour day, which is consistent with the ALJ's actual RFC determination.

A misstatement by an ALJ in a hypothetical is not fatal to the opinion offered by a VE. A court may find harmless error "even though the ALJ may have misstated the limitations in his hypothetical to the VE, [if] the jobs identified by the VE do not require more [exertion], as assessed by the ALJ in his RFC." ***Rehm v. Colvin***, No. 1:12CV07502, 2014 WL 1047255, at *9-10 (S.D. W. Va. Mar. 18, 2014) (stating the ALJ asked the VE to consider a hypothetical individual who could "easily" climb stairs, but in his decision, the ALJ found the claimant could only "occasionally" climb stairs).

> Despite the fact that [the hypothetical question] exceed[ed] the standing and walking limit for sedentary jobs, the VE responded with sedentary jobs that comport with the ALJ's RFC finding . . . Although the ALJ's hypothetical was

19

> inconsistent with the definition of sedentary work, the ALJ's
> statement appears to merely be a misstatement or
> misquotation.  It is apparent from the VE's testimony that she
> understood what the ALJ intended to convey . . .  Therefore,
> any error in the ALJ's phrasing of the hypothetical is
> harmless.

*Mamidov v. Comm'r, Soc. Sec. Admin.*, No. CIV. SAG-10-3628, 2013 WL 150018, at
*2 (D. Md. Jan. 11, 2013).

Mendenhall cites to various cases regarding hypothetical questions posed to
VEs, but all of the cases cited by Mendenhall are distinguishable as those cases dealt
with hypothetical questions posed to the VE lacking any semblance of detail.  **See
Lauer v. Apfel**, 245 F.3d 700, 706 (8th Cir. 2001) (determining the ALJ's hypothetical
was improper based on the ALJ's uninformed RFC determination); **Newton v. Chater**,
92 F.3d 688, 695 (8th Cir. 1996) (iterating omission of pertinent medical deficiencies in
hypothetical question to the VE required remand of the case); **Whitmore v. Bowen**, 785
F.2d 262, 263-64 (8th Cir. 1986) (stating the ALJ's minimal facts in the hypothetical to
the VE warranted remand of the case); **Stephens v. Sec'y of Health, Educ., &
Welfare**, 603 F.2d 36, 41 (8th Cir. 1979) (noting the ALJ's hypothetical question posed
to the VE lacked any of the facts on the record).  Most of the hypothetical questions in
the cases cited above simply asked the VE which jobs a hypothetical individual could
perform "based on the record," without any factual background.  The ALJ in this case
asked the VE a hypothetical question detailing all of Mendenhall's limitations, and
simply transposed the number of hours Mendenhall could stand and sit, which was
harmless error.  The ALJ's actual RFC determination mirrored the VE's determination
the hypothetical individual could perform the duties of an unskilled, sedentary job.

The VE listed three jobs an individual with Mendenhall's RFC could perform:
ampoule sealer, wire patcher, and final assembler (AR. 52).  The VE testified the jobs
exist in a significant number in Nebraska and the national economy (AR. 52).  The VE's
testimony was based on Mendenhall's impairments the ALJ found credible.  The VE's
response to the hypothetical was consistent with an individual capable of walking or
standing for two hours in an eight-hour day.  Therefore, the VE's testimony constitutes
substantial evidence supporting the ALJ's determination Mendenhall was not disabled
under the Act.

**C.     Commissioner's Motion to Strike**

The Commissioner moves to strike the evidence Mendenhall filed on December 9, 2014.  **See** Filing No. 26 - Motion; Filing No. 25 - Index of Evidence.  The evidence, filed nearly one month after Mendenhall's brief, was not referenced in her opening or reply briefs.   The index is titled, "Medical Documents in Support of Complaint," and consists of four documents:   (1) a notice of approval for low-income home energy assistance program, dated November 13, 2014; (2) client PIN for the Department of Health and Human Services, dated November 12, 2014; (3) an application for a Medicaid and insurance affordability program, dated November 12, 2014; and (4) a treatment plan from Lutheran Family Services, dated September 10, 2014.   The Commissioner contends the court should strike and disregard the evidence, which is not part of the administrative record, because the court lacks authority to supplement the record, the evidence does not support remand, and the evidence is immaterial.  **See** Filing No. 27 - Brief p. 1-4.  Mendenhall did not respond to the Commissioner's motion.

Judicial review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g).  The statute requires the Commissioner to file "a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based."  42 U.S.C. § 405(g).  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  **Id.**  Moreover, "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ."  **Id.**  The new evidence is considered, in the first instance, by the Commissioner.  **Id.**

Accordingly, "[i]n the context of judicial review of a decision of the Commissioner regarding SSI disability benefits, evidence outside the administrative record generally is precluded from consideration by the court."  **Baker v. Barnhart**, 457 F.3d 882, 891 (8th Cir. 2006).  Further, only upon a showing of "good cause that new material evidence should be considered, the district court may remand to the agency for consideration of that evidence."  **Id.** at 891 n.5.  "Material evidence is 'non-cumulative, relevant, and

probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the [Commissioner's] determination.'" ***Whitman v. Colvin***, 762 F.3d 701, 708 (8th Cir. 2014) (alteration in original).

Mendenhall fails to suggest any legal justification allowing the court to consider the new evidence dated September through November, 2014, to evaluate the ALJ's May 29, 2013, decision.  Furthermore, Mendenhall fails to suggest the relevance or materiality of the new evidence as a factual matter.  The new evidence is disparate from Mendenhall's alleged disability claims.  Accordingly, the Commissioner's motion to strike is granted.  Mendenhall's 2014 evidence was not considered upon reconsideration of the Commissioner's earlier decision.

## CONCLUSION

For the reasons stated herein, the court concludes the ALJ's decision, which represents the final decision of the Commissioner of the SSA, is supported by substantial evidence in the record as a whole and should not be reversed or remanded. Accordingly, the Commissioner's decision is affirmed.

**IT IS ORDERED**:

1.    The decision of the Commissioner is affirmed and the appeal is denied.

2.    The Commissioner's Motion to Strike (Filing No. 26) is granted.

3.    Judgment against the Plaintiff and in favor of the Defendant will be entered in a separate document.

Dated this 12th day of March, 2015.

BY THE COURT:

 s/ Thomas D. Thalken
 United States Magistrate Judge

22